UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

GREGORY WEHRHAHN,

        Plaintiff,

  v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

        Defendant.

3:13-CV-00708 (CSH)

June 30, 2015

## RULING ON RECOMMENDED RULING OF MAGISTRATE JUDGE

**HAIGHT, Senior District Judge:**

    Plaintiff Gregory C. Wehrhahn brought this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final decision of the defendant Commissioner of Social Security ("the Commissioner") denying plaintiff's application for Disability Insurance Benefits and Supplemental Security Income.

    Plaintiff moved to reverse the Commissioner's decision, or alternatively to remand the case to the Commissioner for further proceedings. The Commissioner cross-moved to affirm her decision in all respects. The Court referred the case to Magistrate Judge Holly B. Fitzsimmons for a recommended disposition. 28 U.S.C. § 636(b)(1)(B). After hearing the parties and counsel, Judge Fitzsimmons filed a Recommended Ruling on Cross Motions [Doc. 30] ("RR") which recommended that this Court deny plaintiff's motion in its entirety and grant the Commissioner's cross-motion to affirm her decision.

    Plaintiff, represented by counsel, filed timely Objections to the RR [Doc. 34], to which

counsel for the Commissioner has responded [Doc. 35]. This Ruling resolves plaintiff's objections to the Magistrate Judge's recommended disposition, which if accepted by the Court would affirm the Commissioner's decision to deny any social security benefits to plaintiff.

## I. BACKGROUND

Plaintiff Gregory Wehrhahn was born on August 26, 1960, and was 51 years old when on December 13, 2011 he appeared for a hearing before Administrative Law Judge ("ALJ") James E. Thomas of the Social Security Administration ("SSA"). Plaintiff had requested that hearing after the SSA initially denied his claim for disability benefits. It appears from the transcript of the administrative record (hereinafter cited as "Tr.") that Wehrhahn was receiving treatment and assistance from the Veterans Administration ("VA"). The record does not reveal the details, but the VA's ministration to Wehrhahn leads to the inference that at some prior time, he served the Nation with honor in one of the armed services.

Plaintiff was represented by counsel at the hearing before the ALJ. Counsel stated on the record that Wehrhahn "applied for benefits [on] April 8th, 2010," alleging "an onset date of February 10th, 2008," that being "the last time he worked at a full-time job." Tr. 38. Counsel further stated that Wehrhahn "didn't start going for treatment until he was hospitalized with a suicide attempt in March of 2010," and added: "Now, from that hospitalization, basically, they told him you need to – you know, you can't work. You need to apply for Disability. You need to get treatment. You need to go forward from here, which is what he's done." *Id*.

The hospitalization to which counsel referred occurred on March 29, 2010, when Wehrhahn presented himself at the Yale New Haven Hospital emergency room, visibly intoxicated and stating that "it's time to end it." Hospital records, Tr. 229. Wehrhahn was admitted to the hospital on that

date and discharged on April 6, 2010, with a principal diagnosis of depression and other diagnoses of alcohol dependence and gout. He then embarked on a series of intermittent stays at treatment and therapy facilities, interspersed with consultations with and treatment by a number of physicians. These efforts to deal with Wehrhahn's problems generated a voluminous medical record which the ALJ considered. The administrative record consisted for the most part of post-March 2010 hospitalization examinations and treatment, but it also included records of Andrew C. Wormser, M.D., who saw Wehrhahn in August and September 2007, and records of the APT Foundation, an outpatient drug free therapy facility, which Wehrhahn attended (while missing some scheduled sessions) during February and early March 2010. These records indicate Wehrhahn's frequent abuse of alcohol, a problem that continued following his discharge from Yale New Haven in April 2010.

The medical evidence shows Wehrhahn has a long history of alcohol and, to a lesser degree, drug abuse. His medical history is complicated by other conditions, particularly mental illness, which manifested itself over the years in one way or another. His problems and impairments are of long standing. At the hearing before the ALJ, Wehrhahn acknowledged as much, with disarming candor, when he answered this question from his attorney:

> Q. [by counsel] Okay. Now, at some point in time your health deteriorated, is that accurate? Your health went downhill, you couldn't work anymore. You had trouble working?
>
> A. It's been an ongoing thing my whole life, the absenteeism.

Tr. 45-46.

The ALJ began his decision with a recitation of the five-step sequential evaluation process for determining whether an individual is disabled , appearing in the SSA regulations, 20 C.F.R. §§ 404.1520(a) and 416.920(a), and frequently paraphrased by the Second Circuit, as in *Tejada v. Apfel*,

167 F.3d 770 (2d Cir. 1999):

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering such vocational factors as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

167 F.3d at 774 (footnote omitted).

As noted, the medical evidence in the case at bar is replete with indications of Wehrhahn's abuse of alcohol and drugs. That complicates the case profoundly. "When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Commissioner of Social Security*, 692 F.3d 118, 123 (2d Cir. 2012). In that circumstance, on the issue of disability *vel non* "The critical question is whether the SSA would still find the claimant disabled if she stopped using drugs or alcohol." *Id.* (internal quotation marks and brackets omitted). This additional element with respect to a disability benefits claimant who has abused alcohol or drugs is the result of the Contract with America Advancement Act, 42 U.S.C. § 1382c (a)(3)(J), enacted by Congress in 1996, which amended the Social Security Act by providing that "[a]n individual shall not be considered . . . disabled . . . if alcoholism or drug

4

addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."

The SSA responded to that Congressional mandate by amending its regulations' advices to claimants to provide in 20 C.F.R. § 416.935:

> (a)  If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.
>
>  (b)  (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled  if you stopped using drugs or alcohol.
>
> (2)  In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Under the statutory and regulatory scheme created by this 1996 amendment, a finding by the Commissioner pursuant to § 416.935(b)(i) of the regulations that a claimant's drug addiction or alcoholism "is a contributing factor material to the determination of disability" precludes any award of disability benefits, because the statute provides that an individual "shall not be considered disabled" if alcoholism or drug addiction would be "a contributing factor material to the

Commissioner's determination that the individual is disabled."

In the case at bar, the ALJ followed the multi-step sequential process of evaluation, as amended, and arrived at these conclusions:

At step one, the ALJ found that Wehrhahn had not engaged in substantial gainful activity since March 1, 2010, the amended alleged onset date of his alleged disability.  Tr. 18.

At step two, the ALJ found that Wehrhahn had two severe impairments: affective disorder and substance abuse disorder.  Tr. 18.

At step three, the ALJ found that "the claimant's impairments, including the substance use disorders, meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 18.  This is a reference to the "Listings," which play a central role in determining whether an individual is disabled.  Sections 12.04 and 12.09 are subsections appearing within section 12.00, captioned "Mental Disorders."  Subsection 12.04 covers "Affective Disorders," described as "Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  20 CFR Parts 400 to 499 (revised as of April 1, 2014) at 514.  Subsection 12.09 covers "Substance Addiction Disorders," described as "Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system."  *Id.* at 516.

If this case were not complicated by plaintiff's history of alcohol and drug consumption, the ALJ's resolution of the first three steps would result in a finding that Wehrhahn was disabled and entitled to benefits.  That is because the ALJ found at step three that plaintiff's impairments "meet"

disorders included in the Listings.[1]  As the SSA's regulations advise claimants: "If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment, we will find you disabled without considering your age, education, and work experience." 20 C.F.R. § 404.1520(d).

However, the ALJ also found:

> After careful consideration of all the evidence, the undersigned finds that the evidence of record clearly shows that the claimant has marked impairments while under the effects of substances. The evidence clearly shows that the claimant has a long history of substance abuse and increased mental impairment symptoms while abusing substances.

Tr. 19.  The ALJ's decision then recites, over two and a half single-spaced pages, a chronology of Wehrhahn's repeated emergencies, hospitalizations, detoxifications, and treatments, almost all related in one way or another to his consumption of alcohol or drugs interspersed with periods of sobriety, during a period of time beginning with April 2010.  Tr. 19-21.  The final source of medical evidence the ALJ's decision cites is Christopher Leveille, Psy.D., a "DDS non-examining psychological consultant" who reviewed the evidence of record "and determined that Listing 12.04 was met in conjunction with Listing 12.09." Tr. 21.  In Dr. Leveille's opinion

> there was no clear evidence that the claimant met the criteria for depression or mania in the absence of substance abuse. Based on his review of the record, Dr. Leveille concluded that the claimant's impairments met listing 12.04 through 12.09, making drug and alcohol abuse a factor material to the determination of disability.

Tr. 21.

ALJ Thomas accepted Dr. Leveille's opinion, and went on to perform the additional steps

---

[1] An impairment "meets" a listed condition if its degree of severity is the same as or greater than the criteria associated with a particular disorder that is included and described in the Listings.

Case 3:13-cv-00708-CSH   Document 37   Filed 06/30/15   Page 8 of 18

of disability evaluation mandated by the 1996 amendment to the Act. The ALJ made additional findings in numbered paragraphs 5-13, Tr. 21-28, which I need not recount at length. The heart of the matter is found in ¶¶ 12 and 13 of the ALJ's decision, Tr. 27-28, which I will quote (omitting the citations to the regulations):

> 12. If the claimant stopped the substance abuse, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform.
>
> 13. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use. Because the substance use disorder is a contributing factor to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision

In consequence of those and related findings, the ALJ's decision concluded that Wehrhahn was not disabled within the meaning of the Act, and accordingly was not eligible for either of the benefits he sought (disability insurance benefits and supplemental security income). That conclusion was mandated by the 1996 amendment to the Act. The ALJ followed the protocol established by the regulations and found that plaintiff's substance abuse disorder was "a contributing factor material to the determination of disability." Tr. 28. The 1996 amendment provides that any individual of whom that can be said "shall not be considered disabled." The Commissioner's final decision approved the ALJ's decision. Judge Fitzsimmons' RR recommends that this Court affirm the Commissioner's decision.

Plaintiff, through counsel, has filed a timely objection to the Magistrate Judge's RR. Doc. 34. The objection is particularized and narrowly crafted. Plaintiff's brief in support of his objection begins by saying: "The primary error in the Recommended Ruling is the acceptance of the ALJ's

erroneous evaluation of Mr. Wehrhahn's disabling mental illness in the context of his substance abuse and abstinence." Doc. 34 at 1. Plaintiff's brief continues: "It is difficult, if not impossible to separate Mr. Wehrhahn's mental illness from his substance abuse," and concludes: "If the effects of a claimant's mental illness cannot be separated from the effects of substance abuse, *the substance abuse is not a contributing factor to the disability determination.*" *Id.* at 2 (emphasis added). For that emphasized conclusion, the brief does not cite Second Circuit authority. The proposition is said to follow from two Tenth Circuit decisions: *McGoffin v. Barnhart*, 288 F.3d 1248 (10th Cir. 2002), and *Salazar v. Barnhart*, 468 F.3d 615 (10th Cir. 2006).[2]

## II.  DISCUSSION

*A.   Scope and Nature of This Court's Consideration of Plaintiff's Objections*

The scope and nature of a district court's review of a magistrate judge's recommended ruling are set forth in the statute governing magistrate judges, 28 U.S.C. § 631 *et seq.* § 636(b)(1) allows any party to "serve and file written objections " to a magistrate judge's "proposed findings and recommendations." That section then provides: "A judge of the court shall make a de novo determination of those portions of the record or specified proposed findings or recommendations to which objection is made." When there is no objection to any or all parts of a magistrate judge's report, the district judge reviews the report "only for clear error on the face if the record." *Guilbe v. Colvin*, No. 13-CV-6725, 2015 WL 1499473 (S.D.N.Y. March 31, 2015), at *1 (citation and internal quotation marks omitted).

In the case at bar, Wehrhahn's objections focus upon a single question: Whether Wehrhahn's

---

[2] The citation for *Salazar* given in plaintiff's brief at page 2 is 180 Fed.Appx. 39. That is an earlier version of the same opinion. *Salazar* acquired its F.3d citation when the Tenth Circuit decided to publish the opinion.

9

demonstrated substance abuse was a contributing factor to the determination of his disability. The ALJ answered that question in the affirmative "because the claimant would not be disabled if he stopped the substance abuse." Tr. 28. The Magistrate Judge's RR concludes that "the ALJ based his decision that plaintiff would not meet Listing 12.04 if he stopped substance abuse on substantial evidence." RR at 69. Wehrhahn's objection is that both ALJ Thomas and Judge Fitzsimmons erred. This Court determines that question *de novo*, while applying the established standards of review.

**B.     Standards of Review**

Federal courts are limited in the extent to which they can vacate or overrule the decision of the Social Security Commissioner granting or denying an application for benefits under the Act. In *Cage v. Commissioner of Social Security*, 692 F.3d 118 (2d Cir. 2012), the Second Circuit summarized its own function and authority:

> When reviewing an appeal from a denial of SSI benefits, our focus is not so much on the district court's ruling as it is on the administrative ruling. But we do not substitute our judgment for the agency's, or determine *de novo* whether the claimant is disabled. Instead, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard. We conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision. Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In our review, we defer to the Commissioner's resolution of the conflicting evidence.

692 F.3d at 122 (citations, internal quotation marks and brackets omitted).

Two comments may be appended to this authoritative compendium of governing principles. The Second Circuit's mandated focus "upon the administrative ruling" rather than "the district court's ruling" is the same, at this more humble level of the case, as this district court's comparable focus

on the administrative ruling rather than the recommended ruling of the magistrate judge. And in a case such as this, where the Commissioner has simply left the Administrative Law Judge's decision undisturbed, the practical consequence is that the "resolution of the conflicting evidence" to which this court principally defers is that of the ALJ, rather than the Commissioner.

**C.    Merits of the Objection**

Plaintiff's objection posits that "it is difficult, if not impossible to separate Mr. Wehrhahn's mental illness from his substance abuse," and argues from that proposition that "If the effects of a claimant's mental illness cannot be separated from the effects of substance abuse, the substance abuse is not a contributing factor to the disability determination." Doc. 34 at 1-2. The latter conclusion is offered as a settled matter of law, whose authority is said to derive from the Tenth Circuit's decisions in *McGoffin*, 288 F.3d 1248, and *Salazar*, 468 F.3d 615.

The *McGoffin* and *Salazar* benefits claimants each suffered from both a mental impairment and substance abuse. An ALJ found in each case that the claimant would not be disabled if she stopped the substance abuse. That finding precluded the conclusion that the claimant was disabled under the Act, and benefits were denied. The Tenth Circuit reversed both cases.

In *McGoffin*, decided in 2002, the Tenth Circuit observed that

> shortly after the law was amended to provide that a claimant could not be disabled by substance abuse alone, the Social Security Administration sent out a teletype on applying the new law. This teletype stated that "[w]hen it is not possible to separate the mental restrictions and limitations imposed by [drug and alcohol abuse] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." In other words, the agency directed that if the effects of a claimant's mental illness could not be separated from the effects of substance abuse, the abuse would be found *not* to be a contributing factor material to the disability determination.

288 F.3d at 1253. The Tenth Circuit faulted the ALJ in *McGoffin* for disregarding that construction of the teletyped language, which the court of appeals construed as an agency direction. Subsequently, the Tenth Circuit faulted the ALJ in *Salazar* for the same transgression:

> With regard to the materiality finding, the Commissioner's teletype further *directs* that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that DAA [drug and alcohol addiction] is *not* a contributing factor material to the disability determination.

468 F.3d at 623 (first emphasis supplied). The Tenth Circuit said accusingly in *Salazar*: "Although the ALJ cited the drug and alcohol regulations in his decision, he never mentioned the Commissioner's teletype," an omission which could be regarded as a "misapplication of the law," *id*. at 624.

One can readily acknowledge that these Tenth Circuit cases support Wehrhahn's objection in the case at bar. Unaccountably, however, plaintiff's brief neither cites nor discusses *Cage v. Commissioner of Social Security*, 692 F.3d 118 (2d Cir. 2012), the Second Circuit decision binding upon this Court, which declares the law in this Circuit concerning the 1996 drug and alcohol addiction amendment to the Social Security Act, and explicitly rejects the Tenth Circuit's opinion in *Salazar*.

The benefits claimant in *Cage* suffered from an affective order and a personality disorder, which caused the conditions on "bipolar disorder, depression, suicidal ideation, dizziness, blackouts, memory loss and chest pain." 692 F.3d at 121. In addition, she had "a long history of drug and alcohol abuse," *id*., which Judge Walker's opinion referred to as "DAA." In consequence, the case fell within the ambit of the 1996 amendment to the Act, with the result that "The critical question is whether [the SSA] would still find [the claimant] disabled if [she] stopped using drugs or alcohol."

692 F.3d at 123 (citing 20 C.F.R. § 416.935(b)(1)).  The Second Circuit said:

> The CAAA [the 1996 amendment] does not specify who bears the burden of proof on DAA materiality, and this is an issue of first impression in our circuit.  But, with one possible exception, all of the other circuit courts that have considered the question have held that the claimant bears the burden of proving that her DAA is not material to the determination that she is disabled.  *Id*.

629 F.3d at 123.  The "one possible exception" the court had in mind was the Tenth Circuit's decision in *Salazar*, which the Second Circuit in *Cage* dismissed as "the lone arguable outlier" and went on to hold: "For the following reasons, we agree with the weight of the authority that claimants bear the burden of proving DAA immateriality."  *Id.*  Judge Walker's opinion then recites a number of reasons for that conclusion.  629 F.3d at 123-125.

Seeking to avoid "the burden of proving DAA immateriality," the claimant in *Cage* relied upon the Commissioner's teletype that made a decisive impression on the Tenth Circuit in *McGoffin* and *Salazar.*  The Second Circuit would have none of it.  Its opinion in *Cage* says dismissively that "the Teletype, as an unpromulgated internal agency guideline, does not have the force of law and is entitled to deference only insofar as it has the power to persuade," a power the teletype lacked: "The same four reasons that support our conclusion that the burden of proving DAA immateriality rests with the claimant render the Teletype, as construed by Cage, unpersuasive."  692 F.3d at 125.

The *Cage* claimant's reliance upon the Commissioner's teletype, as construed by the Tenth Circuit in *Salazar*, fared no better when the Second Circuit turned in *Cage* to a consideration of the sufficiency of the evidence upon which the ALJ denied benefits.  The Second Circuit roundly rejected the Tenth Circuit's reasoning:

> Cage next argues that, regardless of who bears the burden of proof on DAA materiality, the record did not permit the ALJ's determination that she would not be disabled absent DAA.

13

> In briefing this appeal, Cage originally advocated a brightline rule that "an ALJ cannot find that drug or alcohol use is a contributing factor where there is no medical opinion addressing the issue," Appellant Br. At 36 – a position that the Tenth Circuit alone has endorsed based on its reading of the Teletype, *see Salazar,* 468 F.3d at 624. We believe that such a rule, found nowhere in the U.S. Code or C.F.R., is unsound. It would unnecessarily hamper ALJs and impede the efficient disposition of applications in circumstances that demonstrate DAA materiality in absence of predictive opinions.

692 F.3d at 125-126 (footnote omitted). In a footnote dropped from the language quoted in text, the Second Circuit heaped further criticism upon the Tenth Circuit's decision in *Salazar*:

> In *Salazar*, the Tenth Circuit read the Teletype as "instruct[ing]" that a finding of DAA immateriality be made "where the record is devoid of any medical or psychological report, opinion or projection as to the claimant's remaining limitations" in the absence of DAA. 468 F.3d at 624. The relevant portion of the Teletype, however, refers not to cases in which the record lacks predictive opinions, but in which the medical or psychological consultants "*cannot* project what limitations would remain if the individuals stopped using drugs/alcohol" (emphasis added) . . . . But even were we to agree with the Tenth Circuit's reading of the Teletype, *we would decline to defer to this instruction because we find its rationale unpersuasive*.

692 F.3d at 126 n. 3 (concluding emphasis added).

In this case, Wehrhahn contends that the record did not permit the ALJ's determination that he would not be disabled absent DAA. His reliance upon Tenth Circuit authority for that proposition avails him nothing because that authority is contrary to the law of this Circuit. Wehrhahn's brief at 2 also purports to find support in "Social Security Ruling 13-2p," in which the SSA undertakes to "explain our policies for how we consider whether 'drug addiction and alcoholism' (DAA) is material to our determination of disability in disability claims and continuing disability reviews." 78 Fed. Reg., No. 34 (Feb. 20, 2013) at 11939. The brief fails to quote the language from the nine-page document that counsel have in mind. In any event, the Second Circuit made it plain in *Cage* that

the case turns upon what is found in the U.S. Code and the C.F.R.

Under the Act and Regulations, the decisive question in the case is whether substantial evidence in the record supports the ALJ's conclusion that Wehrhahn would be able to work in the absence of his alcohol and drug abuse. That conclusion follows from two subsidiary findings by the ALJ: (1) If Wehrhahn stopped the substance abuse, the continuing medical impairment or combination of impairments would not meet or equal a Listed impairment; and (2) If Wehrhahn stopped the substance abuse, there would be a significant number of jobs in the national economy that he could perform. There must be substantial evidence to support those findings.

The Magistrate Judge recommends that there was sufficient evidence in the record as a whole to support these findings and conclusions by the ALJ. Wehrhahn's objection is that the ALJ erred in that particular respect and the Magistrate Judge erred in accepting the ALJ's error. Having considered the record *de novo*, I hold that there is substantial support for the ALJ's conclusion that without substance abuse, Wehrhahn would no longer be disabled within the meaning of the Act.

The Second Circuit held in *Cage* that a claimant of benefits bears the burden of proving that substance abuse is not a contributing factor material to disability. That burden required Wehrhahn to show through evidence in the record that he would be disabled even if there was no substance abuse. *See, e.g., Guilbe v. Colvin*, No. 13-CV-6725, 2015 WL 1499473 (S.D.N.Y. March 31, 2015), at *15 ("Guilbe, however, has not presented evidence that suggests his depression or knee and back pain, absent his substance abuse, are severe enough to qualify him as disabled within the meaning of the Act.").[3] In *Cage*, the Second Circuit summarized its holding: "We hold that the ALJ

---

[3] I have quoted from the opinion of Magistrate Judge Ellis, which was adopted in its entirety by District Judge Oetken.

did not err in denying Cage benefits, because SSI applicants bear the burden of proving that they would be disabled in the absence of DAA, and substantial evidence supported the ALJ's finding that Cage would not be disabled absent DAA." 692 F.3d at 120.

Wehrhahn has not sustained that burden. There is substantial evidence in the record which points to a contrary conclusion. The ALJ said: "The record clearly shows that the claimant has a greater level of functioning in the absence of substance abuse." The medical evidence which the ALJ reviewed in detail, Tr. 24-26, justifies that assessment. Dr. Leveille, the agency-appointed non-examining psychological consultant, reviewed Wehrhahn's medical records and, as the ALJ noted, "found that, without substance abuse, the claimant is capable of performing simple work for two-hour periods in an eight-hour day with adequate attention, concentration and pace." Tr. 25. As the Magistrate Judge observed," Dr. Leveille noted that plaintiff's primary impairment was a substance addiction disorder, with secondary impairments of affective disorders." RR at 47. The ALJ was entitled to rely upon Dr. Leveille's opinions, and did so. The conclusion toward which this evidence points is that if Wehrhahn stopped substance abuse (his "primary impairment"), the remaining affective disorders ("secondary impairments") would allow him to be gainfully employed, thus precluding a finding of disability.

When one reviews the medical evidence in the case, the support for these conclusions is manifest. The records are replete with emergency medical episodes, hospitalizations, treatments, suicide threats, interruptions of work or personal affairs, almost always caused by or related to Wehrhahn's consumption of alcohol, or less frequently, cocaine. The interspersed periods of relative productivity and tranquility invariably coincide with Wehrhahn's intermittent periods of sobriety, as he fought the addict's lonely battle against his addiction.

I am constrained by the record to conclude that substantial evidence supports the ALJ's decision to deny Wehrhahn benefits on the ground that his substance abuse disorder was a contributing factor material to the determination of disability. That is to say, such evidence supports the ALJ's conclusion that "the claimant would not be disabled if he stopped the substance use." Tr. 28. Wehrhahn does not identify in the medical evidence any opinion explicitly contrary to that crucial conclusion. In that circumstance, the Contract with America Advancement Act enacted by Congress in 1996 mandates the conclusion that Wehrhahn is not disabled under the Social Security Act.

That conclusion is the result of a public policy objective that some might think hardhearted. In *Cage,* 692 F.3d at 124, the Second Circuit quoted with seeming approval the Ninth Circuit's decision in *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007), where the Ninth Circuit said that "Congress sought through the CAAA to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy," and added these insights: "An alcoholic claimant who presents inconclusive evidence of materiality has no incentive to stop drinking, because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated." 481 F.3d at 749-50. This conjuring up of an "alcoholic claimant" who keeps on drinking because he calculates that abstinence might terminate his social security benefits is somewhat at odds with the cruel reality and power of addiction. But no matter. Congress was entitled to decide upon that policy and implement it in the 1996 amendment to the Act. The ALJ's application of that amendment in the case at bar was based upon substantial evidence in the record, and cannot be disturbed by the Court.

### III.  CONCLUSION

For the foregoing reasons, the Recommended Ruling of the Magistrate Judge [Doc. 30] is ACCEPTED in all respects.

The Motion [Doc. 21] of Plaintiff for an Order Reversing the Decision of the Defendant Commissioner, or in the alternative for a Remand for a Hearing, is DENIED.

The Motion [Doc. 24] of the Defendant Commissioner for an Order Affirming the Commissioner's Decision is GRANTED.

This action is DISMISSED without costs.

The Clerk is directed to close the file.

It is SO ORDERED.

Dated:  New Haven, Connecticut
        June 30, 2015

                                                */s/ Charles S. Haight, Jr.*
                                                CHARLES S. HAIGHT, JR.
                                                Senior United States District Judge